15-CV-02016 (MKB) (RML)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TERREL HASKINS,

                                                                    Plaintiff,

                        -against-

CITY OF NEW YORK, and JOHN and JANE DOE 1
through 10, individually and in their official capacities
(the names John and Jane Doe being fictitious, as the true
names are presently unknown),

                                                                    Defendants.

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joanne M. McLaren*
*Tel: (212) 356-2671*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

RULE 56 STANDARD FOR SUMMARY JUDGMENT ........................................ 4

ARGUMENT

POINT I      PLAINTIFF'S CLAIM FOR UNLAWFUL
             ENTRY AND SEARCH FAILS AS A MATTER
             OF LAW ................................................................................. 6

POINT II     PLAINTIFF'S FALSE ARREST CLAIM FAILS
             AS A MATTER OF LAW ...................................................... 7

             A. Plaintiff's Arrest Was Supported By
                Probable Cause Because Plaintiff Had
                Constructive Possession of Cocaine and 97
                Bags of Marijuana. ........................................................ 10

                1.  That Plaintiff May Have Been Present
                    at the Arrest Location as a Guest Does
                    Not Preclude a Finding of Probable
                    Cause. ..................................................................... 12

POINT III    DEFENDANTS ARE ENTITLED TO
             QUALIFIED IMMUNITY WITH RESPECT TO
             PLAINTIFF'S FEBRUARY 14, 2015, ARREST .................... 13

POINT IV     PLAINTIFF'S MALICIOUS ABUSE OF
             PROCESS CLAIM FAILS ...................................................... 17

             A. Plaintiff Has Not Alleged that Defendants
                Acted with an Improper Collateral
                Objective. ...................................................................... 17

             B. Defendants did not Act without Excuse or
                Justification .................................................................. 19

POINT V       PLAINTIFF'S DENIAL OF A RIGHT TO A
              FAIR TRIAL CLAIM FAILS BECAUSE
              THERE IS NO EVIDENCE THAT OFFICERS
              CREATED ANY FALSE EVIDENCE................................19

              A.  Plaintiff's Denial of Fair Trial Claim
                  Against All But Detective Jackson Fails for
                  Lack of Personal Involvement. ....................................20

              B.  Plaintiff's Denial of Fair Trial Claim
                  Against Detective Jackson Fails Because
                  The Information Transmitted to the District
                  Attorney's Office Was Not Materially False. ...............20

POINT VI      CLAIMS       AGAINST      CAPTAIN
              LAUTERBORN FAIL BECAUSE OF HIS
              LACK OF PERSONAL INVOLVEMENT ..........................21

POINT VII     PLAINTIFF'S   MUNICIPAL   LIABILITY
              CLAIM CANNOT SURVIVE SUMMARY
              JUDGMENT ...............................................................................22

CONCLUSION............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Pages**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................4, 5

*Ariza v. City of New York*,
    93-cv-5287, 1996 U.S. Dist. LEXIS 20250 (E.D.N.Y. 2006) ..................................24

*Askins v. City of New York*,
    No. 09-CV-10315, 2011 U.S. Dist. LEXIS 40435 (S.D.N.Y. Mar. 25, 2011) ........6

*Awelewa v. N.Y. City, 11 Civ. 778*,
    2012 U.S. Dist. LEXIS 24244 (S.D.N.Y. Feb. 22, 2012) ........................................9

*Bernard v. United States*,
    25 F.3d 98 (2d Cir. 1994)..........................................................................................8

*Brandon v. City of New York*,
    705 F. Supp.2d 261 (S.D.N.Y. 2010)......................................................................17

*Broughton v. State*,
    37 N.Y.2d 451 (1975) ................................................................................................8

*Brown v. City of New York*,
    11 Civ. 1068, 2013 U.S. Dist. LEXIS 17483 (S.D.N.Y. Feb. 8, 2013) .............15, 20

*Bryant v. Rudman*,
    933 F. Supp. 270 (S.D.N.Y. 1996) ...........................................................................8

*Caldarola v. Calabrese*,
    298 F.3d 156 (2d Cir. 2002).....................................................................................14

*Calderon v. City of New York*,
    14 Civ. 1082, 2015 U.S. Dist. LEXIS 58049 (S.D.N.Y. May 4, 2015)....................6

*Cammick v. City of New York*,
    No. 96 Civ. 4374, 1998 U.S. Dist. LEXIS 18006 (S.D.N.Y. Nov. 16, 1998) ........10

*Caraballo v. City of New York*,
    10-CV-1885, 2012 U.S. Dist. LEXIS 188902 (E.D.N.Y. June 21, 2012) ..........11, 12, 13

*Carter v. District of Columbia*,
    795 F.2d 116 (D.C. Cir. 1986) (D.C. Cir. 1986).....................................................23

*Celestin v. City of New York*,
    581 F. Supp.2d 420 (E.D.N.Y. 2008) ........................................................................9

**Cases**                                                                                                 **Pages**

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................................5

*Chalmers v. Mitchell*,
   73 F.3d 1262 (2d Cir. 1996).......................................................................................10

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986)..................................................................................................22

*Cole v. City of New York*,
   10 Civ. 5308, 2013 U.S. Dist. LEXIS 28530 (S.D.N.Y. Feb. 28, 2013)...........12, 15

*Cuevas v. City of New York*,
   No. 07-CV-4169, 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009).........23

*Curley v. Village of Suffern*,
   268 F.3d 65 (2d Cir. 2001).........................................................................................9

*Davis v. City of New York*,
   No. 04-CV-3299, 2007 U.S. Dist. LEXIS 10555 (E.D.N.Y. Feb. 15, 2007)..........10

*Davis v. County of Nassau*,
   No. 11-CV-0076, 2013 U.S. Dist. LEXIS 1513 (E.D.N.Y. Jan. 3, 2013) ................6

*Dukes v. City of New York*,
   879 F. Supp. 335 (S.D.N.Y. 1995) ...........................................................................10

*Fabrikant v. French*,
   691 F.3d 193 (2d Cir. 2012).....................................................................................8, 9

*FDIC v. Great Am. Ins. Co.*,
   607 F.3d 288 (2d Cir. 2010).......................................................................................5

*First Nat'l Bank of Arizona v. Cities Serv. Co.*,
   391 U.S. 253 (1968)....................................................................................................5

*Franks v. Delaware*,
   438 U.S. 154 (1978)....................................................................................................6

*Gaston v. Coughlin*,
   249 F.3d 156 (2d Cir. 2001).....................................................................................21

*Hardy v. City of New York*,
   No. 12 Civ. 17, 2013 U.S. Dist. LEXIS 100665 (S.D.N.Y. July 9, 2013) .............17

**Cases** **Pages**

*Hauser v. Bartow,*
  273 N.Y. 370 (1937) ...................................................................17

*Heilbut v. City of New York,*
  No. 04 Civ. 4332, 2006 U.S. Dist. LEXIS 71907 (S.D.N.Y. Oct. 2, 2006) .............8

*Henry-Lee v. City of New York,*
  746 F. Supp. 2d 546 (S.D.N.Y. 2010)...........................................16

*Hickey v. City of New York,*
  01 Civ. 6506 1004 U.S. Dist. LEXIS 23941 (S.D.N.Y. Nov. 24, 2004) ................24

*Higazy v. Templeton,*
  505 F.3d 161 (2d Cir. 2007)......................................................5

*Hoyos v. City of New York,*
  999 F. Supp.2d 376 (E.D.N.Y. 2013) .....................................17, 18, 19

*Hunter v. Bryant,*
  502 U.S. 224 (1991)...........................................................15

*Illinois v. Gates,*
  462 U.S. 213 (1983)...........................................................8, 9

*Jaegly v. Couch,*
  439 F.3d 149 (2d Cir. 2006)......................................................8

*Jaramillo v. Weyerhaeuser Co.,*
  536 F.3d 140 (2d Cir. 2008)......................................................5

*Jean-Laurent v. Wilkerson,*
  461 Fed. App'x 18 (2d Cir. 2012).................................................22

*Jeffreys v. City of New York,*
  426 F.3d 549 (2d Cir. 2005)......................................................5

*Jeffreys v. Rossi,*
  275 F. Supp.2d 463 (S.D.N.Y. 2003)...............................................5

*Johnson v. City of New York,*
  06-cv-630, 2010 U.S. Dist. LEXIS 70207 (E.D.N.Y. July 13, 2010)...............18, 20

*Jovanovic v. City of New York,*
  486 Fed. App'x. 149 (2d Cir. 2012)..............................................19

**Cases**                                                                                     **Pages**

*Kentucky v. King,*
    131 S. Ct. 1849 (2011)..................................................................................................6

*Kraft v. City of New York,*
    696 F. Supp.2d 403 (S.D.N.Y. 2010).................................................................17, 18

*Krause v. Bennett,*
    887 F.2d 362 (2d Cir. 1989)..................................................................................9

*Lennon v. Miller,*
    66 F.3d 416 (2d Cir. 1995)..........................................................................8, 14, 15

*Lindsey v. Loughlin,*
    616 F. Supp. 449 (E.D.N.Y. 1985) .........................................................................8

*Lopez v. City of New York,*
    901 F. Supp. 684 (S.D.N.Y. 1995) .......................................................................17

*Malley v. Briggs,*
    475 U.S. 335 (1986).............................................................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)...............................................................................................5

*Matthews v. City of New York,*
    889 F. Supp. 2d 418 (E.D.N.Y. 2012) ..................................................................16

*Mercado v. City of New York,*
    No. 08 Civ. 2855, 2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011)..........................22

*Michigan v. DeFillippo,*
    443 U.S. 31 (1979)..............................................................................................9

*Mistretta v. Prokesch,*
    5 F. Supp.2d 128 (E.D.N.Y. 1998) .......................................................................9

*Oliveira v. Mayer,*
    23 F.3d 642 (2d Cir. 1994)..................................................................................14

*Pacheco v. City of New York,*
    234 F.R.D. 53 (E.D.N.Y. 2006) .......................................................................23, 24

*Pearson v. Callahan,*
    555 U.S. 223 (2009)............................................................................................14

**Cases**                                                                    **Pages**

*People v. Shulman,*
    809 N.Y.S.2d 485 (N.Y. 2005) ...................................................................8

*Peterec v. City of New York,*
    2015 U.S. Dist. Lexis 28504.....................................................................24

*Provost v. City of Newburgh,*
    262 F.3d 146 (2d Cir. 2001)......................................................................21

*Rasmussen v. City of New York,*
    766 F. Supp.2d 399 (E.D.N.Y. 2011) .....................................................24

*Ricciuti v. N.Y.C. Transit Auth.,*
    124 F.3d 123 (2d Cir. 1997)......................................................................19

*Ricciuti v. New York City Transit Auth.,*
    941 F.2d 119 (2d Cir. 1991)......................................................................22

*Richardson v. City of New York,*
    02-cv-3651, 2006 U.S. Dist. Lexis 69577 (E.D.N.Y. 2006)...................24

*Rivera v. United States,*
    928 F.2d 592 (2d Cir. 1991).......................................................................6

*Robison v. Via,*
    821 F.2d 913 (2d Cir. 1987)......................................................................14

*Saucier v. Katz,*
    533 U.S. 194 (2001)..................................................................................14

*Savino v. City of New York,*
    331 F.3d 63 (2d Cir. 2003)........................................................................17

*SCR Joint Venture L.P. v. Warshawsky,*
    559 F.3d 133 (2d Cir 2009).........................................................................4

*Sforza v. City of New York,*
    07 Civ. 6122, 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009) ...............19

*Singer v. Fulton County Sheriff,*
    63 F.3d 110 (2d Cir. 1995).........................................................................7

*Slater v. Mackey,*
    12-cv-04325, 2015 U.S. Dist. LEXIS 152774 (E.D.N.Y. Nov. 10, 2015) ...............18

**Cases**                                                                 **Pages**

*Southerland v. Garcia*,
    483 Fed. App'x 606 (2d Cir. 2012)...................................................................22

*Takacs v. City of New York*,
    09 Civ. 481, 2011 U.S. Dist. LEXIS 7055 (S.D.N.Y. Jan. 24, 2011).....................10

*Taravella v. Town of Wolcott*,
    599 F.3d 129 (2d Cir. 2010)..........................................................................14

*Torres v. Hanslmaier*,
    No. 94 Civ. 4082, 1995 U.S. Dist. LEXIS 6193 (S.D.N.Y. May 2, 1995)..............10

*United States v. Delossantos*,
    536 F.3d 155 (2d Cir. 2008)...........................................................................9

*United States v. Heath*,
    455 F.3d 52 (2d Cir. 2006)......................................................................12, 13

*United States v. Holder*,
    990 F.2d 1327 (D.C. Cir. 1993)................................................................12, 13

*United States v. Sepulveda*,
    102 F.3d 1313 (1st Cir. 1996).......................................................................12

*Velez v. City of New York*,
    CV 2004-1775, 2010 U.S. Dist. LEXIS 54237 (E.D.N.Y. June 2, 2010) ...............24

*Vippolis v. Village of Haverstraw*,
    768 F.2d 40 (2d Cir. 1985).............................................................................22

*Walczyk v. Rio*,
    496 F.3d 139 (2d Cir. 2007)............................................................................8

*Weyant v. Okst*,
    101 F.3d 845 (2d Cir. 1996).........................................................................7, 8

*White-Ruiz v. City of New York*,
    93-CV-7233, 983 F. Supp. 365.......................................................................24

*Wieder v. City of New York*,
    569 F. App'x 28 (2d Cir. 2014),
    *cert. denied* 135 S. Ct. 2843, 192 L. Ed. 2d 876 (2015) .............................16

**Cases**                                                                                          **Pages**

*Zalaski v. City of Hartford,*
    723 F.3d 382 (2d Cir. 2013)......................................................................................8

**Statutes**

Fed. R. Civ. P. 56.................................................................................................1, 4

Fed. R. Civ. P. 56(a) ..................................................................................................4

Local Civil Rule 56.1 .................................................................................................2

§ 1983.........................................................................................................................7

## PRELIMINARY STATEMENT

Plaintiff Terrel Haskins, then 31 years old, was arrested on February 14, 2015, when officers executing a valid search warrant found him (i) asleep, (ii) within feet of a stash of cocaine and marijuana, (iii) in the apartment of his long-time friends, at which he admittedly had spent the night one hundred times in the preceding few years, which he represented as his legal residence on his NYC Fire Department identification card, and where he received official mail, including tax documents and college documents, through the U.S. Postal Service.  Plaintiff now professes that he was merely an overnight guest in the residence, and, while he acknowledges that the police had probable cause to arrest Dale Anderson, who was asleep just a few feet away from him, he claims that officers should not have arrested *him*.  Plaintiff now brings this action alleging unlawful search and seizure, false arrest, failure to intervene, malicious abuse of process, denial of right to a fair trial, and *Monell* liability.

The material facts are not in dispute.  Defendants now seek summary judgment pursuant to Fed. R. Civ. P. 56 with respect to all of Plaintiff's claims because: 1) officers entered and searched the apartment pursuant to a valid search warrant, therefore Plaintiff's unlawful search claim fails; 2) there was probable cause to arrest Plaintiff because of his constructive possession of narcotics under twenty feet away from where he lay sleeping, in a closet to which he had access, and where the supervising sergeant believed that some of Plaintiff's clothing was stored, thus requiring that his false arrest claim be denied; 3) even if actual probable cause were somehow found to be lacking, the officers' decision to arrest Plaintiff was not so flawed that no reasonable officer would have made a similar decision, and thus the officers are entitled to qualified immunity; 4) there was no unconstitutional action in which any officer was required to intervene; 5) no officer presented fabricated material evidence to prosecutors; and 6) Plaintiff has not identified any municipal policy or practice relating to false arrests for drug possession which directly caused him to suffer a constitutional violation.

## STATEMENT OF FACTS

For a full statement of facts assumed to be undisputed for purposes of this motion only, the Court is respectfully referred to Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (hereinafter "Defs.' 56.1") which is being submitted concurrently herewith.  A brief recitation of the salient undisputed facts, and facts deemed to be true for purposes of this motion only, is, however, set forth herein for the Court's consideration.

On or about February 10, 2015, a search warrant was issued by a neutral magistrate, the Honorable Louis L. Nock, of the Criminal Court of the City of New York, County of New York. *See* Defs. 56.1 at ¶1; Search Warrant, attached to Declaration of Joanne M. McLaren dated January 20, 2017 ("McLaren Decl.") as Exhibit B ("Exh. B").  The search warrant specified that there was reasonable cause to believe that evidence of possession and distribution of cocaine may be found at 2940 West 31st Street, Apartment 7G, in Kings County, New York ("Apartment 7G"), and on the person of Dale Anderson ("Anderson").  *See id.* at ¶2.  The search warrant thus authorized a search of Apartment 7G, between the hours of 6 a.m. and 9 p.m.  *See id.*

Plaintiff has known Anderson since Plaintiff was about 17 or 18 years old, *see* Defs.' 56.1 at ¶6, when they worked together in a store.  *See id.* at ¶7.  Anderson's girlfriend is Carolyn Copeland, who is the mother of several of Plaintiff's friends, including Malik, Jason, and Charles.  *See id.* at ¶¶8, 10.  Ms. Copeland has lived at Apartment 7G for over ten years.  *See id.* at ¶9.  Plaintiff's friends, Malik, Jason, and Charles, live there also.  *See id.* at ¶11.  In the few years preceding the execution of the search warrant here, Plaintiff had stayed overnight at Apartment 7G over one hundred times.  *See id.* at ¶14.  Plaintiff had met Dale Anderson thousands of times.  *See id.* at ¶13.  In 2012, he regularly walked and trained a dog staying with Ms. Copeland in Apartment 7G, *see id.* at ¶¶65-66, and was stopped by the police outside the apartment block several times for walking this dog without a leash.  *See id.* at ¶64.

Plaintiff holds himself out as living in Apartment 7G. In November 2013, Plaintiff gave 2940 West 31st Street, Apartment 7G, Brooklyn, New York, as his address to police when he was arrested on the subway. *See id.* at ¶¶67-69. He does not dispute that this is the address which his former cell phone provider has on file for him. *See id.* at ¶63. For some time before the arrest at issue here, Plaintiff worked as a fire guard. *See id.* at ¶70. The position requires taking a test, to become qualified, and then requalification every three years. *See id.* at ¶¶71-72. Plaintiff's NYC Fire Department Identification Card -- which he requires in order to work -- shows his address as 2940 West 31st Street, Apartment 7G, Brooklyn, NY, 11224. *See id.* at ¶¶73-74, 76-77. This address was listed on the card which he received in April 2014. *See id.* at ¶¶74, 76. This address is also on the card which he asked to be reissued to him in February 2016. *See id.* at ¶¶75-76. Plaintiff also receives mail, including tax documents and college documents, at 2940 West 31st Street, Apartment 7G. *See id.* at ¶¶60-62.

On February 13, 2015, after he finished work, Plaintiff visited his girlfriend at her mother's apartment, until around midnight. *See id.* at ¶¶17, 19. After leaving his girlfriend, Plaintiff called Ms. Copeland, whose number he knew by heart, saying, "Hey, what's up? What's up, baby? I'm out here, do you think I can spend the night at your house?" *See id.* at ¶¶21-22. Plaintiff actually entered 2940 West 31st Street, went up to the seventh floor by elevator, and made the telephone call to Ms. Copeland from right outside her apartment door. *See id.* at ¶¶20, 23. Ms. Copeland agreed that he could stay, and, shortly thereafter, Anderson opened the door. *See id.* at ¶¶24-25. Plaintiff put his coat over a closet door in the hallway. *See id.* at ¶26. At some point, he went to sleep on a couch in the living room. *See id.* at ¶27.

Early in the morning of February 14, 2015, a team of officers executed the search warrant at Apartment 7G. *See id.* at ¶29, 31. Plaintiff had been sleeping on a couch in the living room up until the time when the officers entered, *see id.* at ¶¶27,39, and was awoken by the noise of

the police entry. *See id.* at ¶30. Anderson was also sleeping on a couch in the living room, just a few feet away from Plaintiff. *See id.* at ¶38. The arresting officer, Detective Jackson, could smell marijuana in the apartment when he entered. *See id.* at ¶32. During their search of the apartment, officers found a box containing cocaine, and 97 bags of marijuana. *See id.* at ¶34. These materials were in plain sight on a shelf, around eye-level, in a hallway closet. *See id.* at ¶35-36. No door separated the living room from the hallway. *See id.* at ¶41. The closet was approximately 12 to 20 feet from the couches on which Plaintiff and Anderson had been sleeping. *See id.* at ¶¶38-39. To get to the bathroom from where Plaintiff had been sleeping, one would have to walk right past the closet in which the drugs were found. *See id.* at ¶¶42-45. The supervising sergeant, Sergeant Strong, saw clothes which he understood to belong to Plaintiff in the closet in which the drugs were found. *See id.* at ¶46; Strong Decl. at ¶5.

Plaintiff and Anderson were arrested for criminal possession of a controlled substance. *See Defs.' 56.1* at ¶¶48-49. Police did not arrest other adults in the apartment. *See id.* at ¶51. On or about February 19, 2015, charges against Plaintiff were dismissed on motion of the District Attorney's Office. *See id.* at ¶58. Dale Anderson pled guilty under Superior Court Information 327/2015, and accepted a prison term. *See id.* at ¶59.

## RULE 56 STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where, as here, the moving party can demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir 2009). "A fact is

'material' . . . when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). Once the movant has demonstrated an absence of a genuine issue of material fact, the nonmoving party, in order to defeat the motion, must do more than show that there is "some metaphysical doubt as to the material facts," *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quotation omitted), and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (quotation omitted). Rather, the non-moving party "must produce admissible evidence that supports [his] pleadings. *Jeffreys v. Rossi*, 275 F. Supp.2d 463, 474 (S.D.N.Y. 2003) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment. *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In this case, there is no genuine issue of material fact requiring a trial. It is undisputed that (i) during the execution of a valid search warrant, Plaintiff was found asleep in an apartment, where he receives mail through the postal service, and which his official identification indicates is his residence, and (ii) upon officers' discovery of a large quantity of marijuana and cocaine, in

a closet to which Plaintiff had unfettered access, fourteen to twenty feet from where Plaintiff lay,

Plaintiff was arrested.  These undisputed facts necessitate the disposal of all of Plaintiff's claims.

## ARGUMENT

**POINT I     PLAINTIFF'S CLAIM FOR UNLAWFUL ENTRY AND SEARCH FAILS
                 AS A MATTER OF LAW**

Plaintiff makes a bare-bones claim that Defendants "unlawfully entered and search [*sic*]

Plaintiffs' [*sic*] home." (Amended Complaint, McLaren Decl., Exh. K at ¶32).  Interestingly,

Plaintiff acknowledges in this claim that Apartment 7G *was* in fact his home at the time of the

arrest, *see id.*, despite claiming elsewhere that he did *not* live there, and thus -- under his

erroneous view of the law -- should not have been arrested because he was not a permanent

resident of the apartment.  His claim for unlawful entry and search in violation of the Fourth

Amendment fails as a matter of law.  The Fourth Amendment permits entry into an individual's

home pursuant to a valid warrant.  *See* U.S. Const., amend IV; *Kentucky v. King*, 131 S. Ct.

1849, 1856 (2011).  A search warrant, signed by a neutral and detached magistrate, creates a

presumption that probable cause exists to enter and search a location.  *See Franks v. Delaware*,

438 U.S. 154, 160 (1978); *see also Davis v. County of Nassau*, No. 11-CV-0076, 2013 U.S. Dist.

LEXIS 1513, at *10 (E.D.N.Y. Jan. 3, 2013) ("There is a presumption that the issuance of a

[search] warrant is reasonable and establishes probable cause.").  "Great deference" must be

shown to the neutral magistrate's determination, in issuing the warrant, that probable cause

existed to search the premises.  *Calderon v. City of New York*, 14 Civ. 1082, 2015 U.S. Dist.

LEXIS 58049, at *14 (S.D.N.Y. May 4, 2015).  "[A] plaintiff who argues that a warrant was

issued on less than probable cause faces a heavy burden."  *Rivera v. United States*, 928 F.2d 592,

602 (2d Cir. 1991).  Where a plaintiff cannot meet that heavy burden, summary judgment for

defendants is proper.  *See Askins v. City of New York*, No. 09-CV-10315, 2011 U.S. Dist. LEXIS

40435, at *7 (S.D.N.Y. Mar. 25, 2011) (granting summary judgment to defendants because

"[t]he existence of a valid search warrant necessitates dismissal of plaintiff's claims of unlawful search . . . as a matter of law").

Here, there is no question that police officers entered Apartment 7G on February 14, 2015, pursuant to a valid search warrant, issued by a neutral magistrate.[1] *See* McLaren Decl., Exh. B. Plaintiff's Complaint completely failed to inform this Court of this critical fact. The search warrant was obtained based on proof provided by Detective Essence Jackson, who had overseen a confidential informant's and an undercover officer's multiple purchases of cocaine from an occupant of Apartment 7G. (Defs.' 56.1 at ¶¶3-4). Because there was presumptive probable cause to search Apartment 7G based on the issuance of a search warrant for said premises by a neutral, detached magistrate, and because Plaintiff cannot offer any evidence to rebut this presumption, Plaintiff's claim for unlawful search and seizure fails as a matter of law.

**POINT II**     **PLAINTIFF'S FALSE ARREST CLAIM FAILS AS A MATTER OF LAW**

A § 1983 claim for false arrest, resting on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To succeed on a claim for false arrest under either New York law or § 1983, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant*, 101 F.3d at 853; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

It is black-letter law that probable cause to arrest "constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or

---

[1] The warrant was issued on February 10, 2015, by the Honorable Louis L. Nock, and authorized officers to enter Apartment 7G, between 6:00 a.m. and 9:00 p.m., and to search the premises for items including, but not limited to, "cocaine and evidence of the distribution of cocaine," and "evidence of possession of narcotics and means of committing a narcotics crime." *See* Search Warrant, Exh. B.

under § 1983." *Weyant*, 101 F.3d at 852 (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Broughton v. State*, 37 N.Y.2d 451, 458 (1975). Accordingly, there is no liability for false arrest if the arresting officer had probable cause to arrest the plaintiff. *See Bryant v. Rudman*, 933 F. Supp. 270, 274 (S.D.N.Y. 1996) (citing *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)); *Broughton*, 37 N.Y.2d at 458.

Probable cause to arrest exists when "police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Zalaski v. City of Hartford*, 723 F.3d 382, 389-90 (2d Cir. 2013) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)). Whether an officer has probable cause to arrest must be determined from "the facts known by the arresting officer at the time of the arrest." *Heilbut v. City of New York*, No. 04 Civ. 4332, 2006 U.S. Dist. LEXIS 71907, at *16 (S.D.N.Y. Oct. 2, 2006) (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)). The existence of probable cause is evaluated under an objective standard. *See Lindsey v. Loughlin*, 616 F. Supp. 449, 451 (E.D.N.Y. 1985). Thus, in determining whether probable cause existed, an officer's subjective motivation for making an arrest is not relevant. *See Broughton*, 37 N.Y.2d at 459. Rather, the relevant question is whether there was, objectively, "a basis for a reasonable officer to *believe*, even if incorrectly, that [plaintiff] was committing [a crime]." *Fabrikant v. French*, 691 F.3d 193, 217 (2d Cir. 2012) (emphasis in original).

A finding of probable cause requires a showing only of a "probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983); *People v. Shulman*, 809 N.Y.S.2d 485, 493 (N.Y. 2005) (probable cause "does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been . . . committed by

the person arrested").  The standard "does not require an officer to be certain that [the] subsequent prosecution of the arrestee will be successful." *Fabrikant*, 691 F.3d at 214; *see also Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (noting that an officer's function is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence").  Whether a plaintiff's criminal charges were dismissed is irrelevant to the determination of probable cause. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  This is because "the standard for probable cause is lower than that for conviction." *United States v. Delossantos*, 536 F.3d 155, 161 (2d Cir. 2008).  "Thus, 'innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands.'" *Id.* at 161 (quoting *Gates*, 462 U.S. at 244 n.13).

Once an officer has a reasonable basis for believing that there is probable cause to effect an arrest, the officer is under no obligation to conduct further investigation. *See, e.g.*, *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Celestin v. City of New York*, 581 F. Supp.2d 420, 432 (E.D.N.Y. 2008) ("[O]nce the evidence establishes probable cause, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence.").  Police officers, therefore, have "no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause." *Mistretta v. Prokesch*, 5 F. Supp.2d 128, 135 (E.D.N.Y. 1998); *see also Awelewa v. N.Y. City, 11 Civ. 778*, 2012 U.S. Dist. LEXIS 24244, at *8 (S.D.N.Y. Feb. 22, 2012).  Indeed, "[t]o hold otherwise would be to allow every suspect,

guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995).

As detailed below, the undisputed facts here clearly demonstrate that there was probable cause for Plaintiff's arrest. Accordingly, Plaintiff's false arrest claim fails as a matter of law.

### A.     Plaintiff's Arrest Was Supported By Probable Cause Because Plaintiff Had Constructive Possession of Cocaine and 97 Bags of Marijuana.

Probable cause existed for Plaintiff's arrest based on his constructive possession of cocaine and marijuana. Under New York law, a person "constructively possesses tangible property when he or she exercises 'dominion and control' over the property with a sufficient level of control over the area in which the contraband is found." *Davis v. City of New York*, No. 04-CV-3299, 2007 U.S. Dist. LEXIS 10555, at *17 (E.D.N.Y. Feb. 15, 2007). The doctrine of constructive possession affords the police probable cause to arrest *anyone* in a dwelling when it "reasonably appears that all members of the dwelling exercised dominion and control over the area in which the contraband is found." *Takacs v. City of New York*, 09 Civ. 481, 2011 U.S. Dist. LEXIS 7055, at *8 (S.D.N.Y. Jan. 24, 2011). Dominion and control need not be over the drugs themselves, but merely be "over the *area* the drugs were found in." *Chalmers v. Mitchell*, 73 F.3d 1262, 1272 (2d Cir. 1996) (emphasis in original).

Residence in a shared apartment supports an inference of such jointly exercised dominion and control, sufficient to support a lawful arrest for criminal possession of property recovered from the apartment. *See Cammick v. City of New York*, No. 96 Civ. 4374, 1998 U.S. Dist. LEXIS 18006, at *7 (S.D.N.Y. Nov. 16, 1998); *see also Torres v. Hanslmaier*, No. 94 Civ. 4082, 1995 U.S. Dist. LEXIS 6193, at *6-7 (S.D.N.Y. May 2, 1995) (finding that established residency in an apartment was persuasive evidence that plaintiff had constructive possession over the firearm found within it). In *Cammick*, two sisters, aged 16 and 20, were arrested for criminal possession of a weapon when, during the execution of a search warrant at their apartment, police

officers recovered a loaded firearm and an imitation pistol from a closet. *Id.* at *2-7. The court determined that the officers had probable cause to arrest the sisters, both residents of the apartment, for criminal possession. *Id.* at *7-8. The Court rejected plaintiffs' contention that, because the gun was found in a closet containing men's clothing, officers lacked knowledge that would lead them to believe that the gun belonged to either plaintiff. *Id.* Calling such information "irrelevant," the Court noted that the officers arrested plaintiffs for possession, not ownership, of the weapon, and concluded that "[t]he gun was still in the plaintiffs' constructive possession because they jointly exercised dominion and control over their apartment." *Id.*

In evaluating residency, police are entitled to believe that individuals found sleeping in an apartment are residents of the apartment. *See Caraballo v. City of New York*, 10-CV-1885, 2012 U.S. Dist. LEXIS 188902, at *6-7 (E.D.N.Y. June 21, 2012). That it is ultimately discovered that an individual found sleeping in an apartment does not live there does not alter the probable cause analysis. *See id.* ("Probable cause is not defeated because a person residing in the apartment at the time of the search did not live there regularly, because [defendants] had reason, as persons of reasonable caution, to believe that persons sleeping in the apartment were residents of the apartment and therefore, in constructive possession of the contraband found therein."). In this case, where Plaintiff was asleep in the apartment, and his access to the closet containing the drugs was unchecked, the police were entitled to believe that he was in fact a legitimate resident of the apartment. As such, it was reasonable for officers to believe that he was, if not principally responsible for the drugs, at least in constructive possession of them. Accordingly, officers had probable cause for Plaintiff's arrest, meriting a grant of summary judgment in defendants' favor on Plaintiff's false arrest claim.

### 1. That Plaintiff May Have Been Present at the Arrest Location as a Guest Does Not Preclude a Finding of Probable Cause.

That Plaintiff attempts to argue that he was merely an overnight guest in Apartment 7G on the morning of his arrest in no way precludes a finding that there was probable cause to believe that he was engaged in unlawful possession of cocaine and marijuana. *See Caraballo*, 2012 U.S. Dist. LEXIS 188902, at *6-7 (holding that "[p]robable cause is not defeated because a person residing in the apartment at the time of the search did not live there regularly;" finding it undisputed that plaintiffs were in constructive possession of contraband discovered in the apartment where they were sleeping, and granting summary judgment to defendants).   Courts have repeatedly found that probable cause existed to arrest individuals based on their connection to drug activity in locations where those individuals were merely guests or visitors. *See, e.g., id.; United States v. Heath*, 455 F.3d 52 (2d Cir. 2006); *United States v. Sepulveda*, 102 F.3d 1313 (1st Cir. 1996); *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993) (keeping narcotics unsecured in private residence was indicative that residence's owner considered visitor "sufficiently complicit to allow him a full view"); *Cole v. City of New York*, 10 Civ. 5308, 2013 U.S. Dist. LEXIS 28530 (S.D.N.Y. Feb. 28, 2013) (officers had probable cause to arrest plaintiff when drugs were found during the execution of a search warrant in his friend's basement, where plaintiff was a guest, despite plaintiff's denial of knowledge of the presence of drugs).

The rationale for this rule was explained in *Heath*, where police discovered cocaine in plain view at the bottom of a stairwell of a home where defendant was a guest.  The Second Circuit held that there was probable cause to arrest defendant, and warned that it was of no import whether the defendant "actually saw the bags of cocaine." *Heath,* 455 F.3d 52 at 57. Rather, what influenced the court was that the defendant *could* have seen the drugs, "and in fact would be expected to see them, in the regular course of walking through the small home's public

spaces."[2]   The Second Circuit concluded that "those who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense." *Id.*   Thus, because the guest could have seen the drugs in the residence, a reasonable police officer could properly conclude that the defendant was complicit in the commission of the crime, thus providing probable cause for arrest.

Accordingly, even if one credits Plaintiff's story here that he had come to Apartment 7G simply for an overnight visit, this has no bearing on the probable cause determination.   The officers were entitled to believe that Plaintiff, because he was sleeping in the apartment, was in fact a resident there. *See Caraballo*, 2012 U.S. Dist. LEXIS 188902, at *6-7.   And, even if he were an overnight guest, because the full-time occupants of the home had taken insufficient steps to shield him from indicia of criminal activity in the home, Plaintiff could have observed, by sight or smell, the drugs in the apartment, regardless of whether or not he actually did. *See Holder*, 990 F.2d at 1329; *Heath*, 455 F.3d at 57-58.   The officers were thus entitled to believe, rightly or wrongly, that Plaintiff was complicit in the drug activity, and his arrest was thus supported by probable cause.

## POINT III   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFF'S FEBRUARY 14, 2015, ARREST

As set forth above, Defendants submit that there was in fact probable cause for Plaintiff's arrest.   However, even if this court is not inclined to find that they had probable cause, they certainly had "arguable probable cause," triggering qualified immunity.   "Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[2] The residence in *Heath* was a house, with at least two stories, yet the guest was charged with observing drugs in any public area of the home.   Apartment 7G, in contrast, was on one level, and consisted of only four small bedrooms (the largest of which was only 9 feet 3 inches by 14 feet 10 inches), two small bathrooms, a living room and a combined kitchen/dining area, for a total apartment size of less than 900 square feet. *See* Floor Plan, attached to McLaren Decl. as Exhibit D ("Exh. D").

*Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010). To merit a finding of arguable probable cause, and thus qualified immunity, an officer need only demonstrate either "(a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987). An officer's belief that probable cause existed is only objectively unreasonable (thus not worthy of qualified immunity) when "no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21, 424 (2d Cir. 1995) (even where a rational jury could find that probable cause did not exist, officer entitled to qualified immunity where a rational jury could not find that his judgment was "so flawed that no reasonable officer would have made a similar choice"); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (qualified immunity available to officer "when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted."). Thus, where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is entitled to qualified immunity. *See Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The main "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). In short, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly

incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

Courts have found, at the least, arguable probable cause to arrest in circumstances similar to those presented here, where an individual is found in a dwelling with drugs, and there is evidence that the arrestee exercised a degree of dominion and control over the area where the drugs were found.  For example, in *Cole v. City of New York*, 10-Civ. 5308, 2013 U.S. Dist. LEXIS 28530 (S.D.N.Y. Feb. 28, 2013), the court found that, even if an officer did not have probable cause to arrest plaintiff, who, although denying knowledge of drugs in the apartment, had been present in the apartment when the drugs had been recovered, the officer met at least the "relaxed" standard for qualified immunity.  *Id.* at *22.  The Court explained that qualified immunity protects an officer who "reasonably but mistakenly" concludes that probable cause exists.  *Id.* at 23.  Finding that it could not conclude "that no officer of reasonable competence could have made the same choice in similar circumstances," the Court thus granted qualified immunity to defendant on plaintiff's false arrest claim.  *Id.*  Likewise, in *Brown v. City of New York*, 11 Civ. 1068, 2013 U.S. Dist. LEXIS 17483 (S.D.N.Y. Feb. 8, 2013) despite the fact that plaintiffs were undisputedly not residents of the apartment searched, but were overnight guests -- as Plaintiff here seeks to portray himself -- the Court found that their being asleep in the room where drugs were discovered necessitated a conclusion that "reasonable officers could *at least* disagree as to whether or not there was probable cause" to arrest them on constructive possession grounds.  *Id.* at 23-24 (emphasis in original).  Thus, there was "*at a minimum,* arguable probable cause to arrest and detain them." *Id.* at 24 (emphasis added).

Similarly, the facts and circumstances presented here simply cannot support a conclusion that the decision to arrest Plaintiff based on his constructive possession of narcotics was "so flawed that no reasonable officer would have made a similar choice." *Lennon*, 66 F.3d at 425.

As discussed above, Plaintiff was found in an apartment which had been the subject of a valid search warrant for cocaine, *see* McLaren Decl., Exh. B, from which previous controlled buys of cocaine had occurred, *see* McLaren Decl., Exh. D, and where cocaine and marijuana were stored at eye-level at the front of a hall closet which Plaintiff would pass every time he went to the bathroom. *See* Defs.' 56.1 at ¶¶42-45. Plaintiff had been at work until 11 p.m. the night before his arrest. *See id.* at ¶16, 78. Plaintiff's NYC Fire Department identification card, without which he could not work, showed that he lived at Apartment 7G. *See id.* at ¶¶73-77. Plaintiff's jacket was in the hallway, *see* Defs.' 56.1 at ¶26, and the supervising sergeant believed that certain of Plaintiff's clothes lay around the closet where the drugs were found. *See id.* at ¶46; Strong Decl. at ¶5. Faced with the totality of this evidence pointing towards Plaintiff's dominion or control over the area in which the drugs were found, it is not possible to conclude that *no* reasonable officer could have concluded that probable cause to arrest Plaintiff existed. Accordingly the officers here are entitled to, at the least, qualified immunity with respect to Plaintiff's February 2015 arrest.[3]

---

[3] Because Plaintiff suffered no constitutional violation, his failure to intervene claim must also fail. "An underlying constitutional violation is an essential element of such a claim." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010); *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."), *cert. denied* 135 S. Ct. 2843, 192 L. Ed. 2d 876 (2015); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying [it]."). Here, because Plaintiff's arrest was supported by probable cause, he suffered no constitutional violation, and there was thus no constitutional violation in which other officers were required to intervene. Accordingly, lacking a predicate violation, Plaintiff's failure to intervene claim cannot survive summary judgment. Furthermore, plaintiff does not identify which defendant was involved in the alleged constitutional violation, and which defendant failed to intervene. A defendant who is alleged to commit the underlying violation cannot also be liable for failure to intervene. *Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013) ("The Court has already concluded [that the two officers] both may be held liable under a theory of direct participation, therefore neither would be held liable for failure to intervene.").

**POINT IV**     **PLAINTIFF'S MALICIOUS ABUSE OF PROCESS CLAIM FAILS**

To make out a §1983 claim for malicious abuse of process, a plaintiff must show that the defendant "1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, 2) with intent to do harm without excuse or justification, and 3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hardy v. City of New York*, No. 12 Civ. 17, 2013 U.S. Dist. LEXIS 100665, at *9-10 (S.D.N.Y. July 9, 2013). "The pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) (emphasis in original).

A.     **Plaintiff Has Not Alleged that Defendants Acted with an Improper Collateral Objective.**

Plaintiff cannot demonstrate that Defendants acted with an improper "collateral objective," which is "[t]he crux of a malicious abuse of process claim." *Kraft v. City of New York*, 696 F. Supp.2d 403, 416 (S.D.N.Y. 2010). In order to establish the collateral objective element "a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose." *Id.* That is, the plaintiff must demonstrate that the arresting officer sought to achieve "a collateral purpose beyond or in addition to his criminal prosecution," *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003), "such as the infliction of economic harm, blackmail, or retribution." *Hoyos v. City of New York*, 999 F. Supp.2d 376, 391 (E.D.N.Y. 2013).

The proper use of legal process, even where driven by malicious motives, cannot give rise to a malicious abuse of process claim. *See Savino*, 331 F.3d at 77 (there can be "no abuse of process because whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it"); *Brandon v. City of New York*, 705 F. Supp.2d 261, 275 (S.D.N.Y. 2010) ("If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." (alteration in original) (quoting *Hauser v. Bartow*, 273 N.Y. 370, 374 (1937))). In *Hoyos*, for example, the court held that, even assuming

that defendants' arrest of plaintiff was motivated by personal animus, the objective which plaintiff alleged -- that defendants wanted to "make a collar"[4] -- was not "an improper *collateral* objective." *Id.* (emphasis in original).  The court succinctly explained:  "In contrast to an ancillary purpose such as extortion, a desire to make an arrest is not a purpose that is collateral to the proper use of legal process." *Id.* at 392.  Accordingly, provided that the goal or purpose is a legitimate use of process, such as making an arrest, or convicting a defendant, a malicious prosecution claim cannot stand. *See Kraft*, 696 F. Supp.2d at 416 ("tampering with evidence is not considered abuse of process because the goal or purpose -- convicting the defendant -- is a legitimate use of process."); *Slater v. Mackey*, 12-cv-04325, 2015 U.S. Dist. LEXIS 152774 (E.D.N.Y. Nov. 10, 2015) (plaintiff's claim that she was arrested because defendants wanted to demonstrate their power and authority over her did not constitute malicious abuse of process because such a claim spoke only to defendants' motives, not to a collateral purpose); *Johnson v. City of New York,* 06-cv-630, 2010 U.S. Dist. LEXIS 70207, at *29-30 (E.D.N.Y. July 13, 2010) (wanting to make an arrest with "the absolute minimum work possible" is not a collateral objective warranting liability for abuse of process.)

Here, Plaintiff claims that the use of legal process to place Plaintiff under arrest was done with the collateral objective of "cover[ing] up [the officers'] assault of plaintiff." *See* Amended Complaint, Exh. K at ¶39.  As an initial matter, Plaintiff explicitly denied that he was physically harmed in any way by officers during the course of his arrest. *See* Defs.' 56.1. at 54, 81.  If Plaintiff is claiming that the arrest itself was the "assault" suffered by Plaintiff, the claim fails because the making of an arrest is not a purpose that is "collateral" to the proper use of process. Instead, the making of an arrest is an employment of legal process exactly for the purpose for which the law created it. *See Hoyos*, 999 F. Supp.2d at 392.  Because Plaintiff has failed to raise

---

[4] *i.e.*, make an arrest. *Hoyos,* 999 F. Supp. at 392.

a genuine issue of material fact regarding the existence of a purpose collateral to the making of Plaintiff's arrest, Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim must be granted.

### B.      Defendants did not Act without Excuse or Justification

While "a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process." *Hoyos v. City of New York*, 999 F. Supp.2d 376, 391 (E.D.N.Y. 2013); *see also Sforza v. City of New York*, 07 Civ. 6122, 2009 U.S. Dist. LEXIS 27358, at *49 (S.D.N.Y. Mar. 31, 2009) (presence of probable cause precludes a conclusion that a defendant acted "with intent to do harm without excuse or justification"). As discussed above, the fact that Plaintiff was found asleep a short distance away from a stash of illegal drugs, in an apartment in which his identification shows that he lives, provides "excuse or justification" for Plaintiff's arrest, thus negating the second element of this claim. For this additional reason, summary judgment should be granted for Defendants on Plaintiff's malicious abuse of process claim.

### POINT V      PLAINTIFF'S DENIAL OF A RIGHT TO A FAIR TRIAL CLAIM FAILS BECAUSE THERE IS NO EVIDENCE THAT OFFICERS CREATED ANY FALSE EVIDENCE

In order to make out a denial of fair trial claim premised on a fabrication of evidence, a plaintiff must prove that (1) a defendant, (2) fabricated evidence, (3) that was likely to influence a jury's decision, (4) forwarded that information to prosecutors, and (5) that the plaintiff suffered a deprivation of liberty as a result. *See Jovanovic v. City of New York*, 486 Fed. App'x. 149, 152 (2d Cir. 2012); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Plaintiff's claim here fails against all but Detective Jackson for lack of personal involvement, because only Detective Jackson communicated with the District Attorney's Office, and it fails against Detective Jackson because the information which he communicated to the District Attorney's Office was not false in any material respect.

### A.  Plaintiff's Denial of Fair Trial Claim Against All But Detective Jackson Fails for Lack of Personal Involvement.

Plaintiff claims in the Complaint that unidentified "individual defendants" "created false evidence," Amended Complaint, McLaren Decl. Exh. K at ¶47, and forwarded that false evidence to the King's County District Attorney's Office." *Id.* at ¶48.  Plaintiff cannot show *who* among the individual defendants allegedly transmitted this allegedly false evidence, offering only that it was "one or more" of the individual defendants.  *See* Amended Complaint, McLaren Decl. Exh. K at ¶20.  The only evidence in the record of communications between the District Attorney's Office and the officers at issue here is the Criminal Court Complaint, sworn to by Detective Jackson.  *See* McLaren Decl. at ¶14; Defs.' 56.1 at ¶57.  To the extent that the other individual defendants did not forward *any* information to the District Attorney's Office, this claim must be dismissed as against them at the outset.  *See Brown v. City of New York*, 11 Civ. 1068, 2013 U.S. Dist. LEXIS 17483, at *6-7 (S.D.N.Y. Feb. 8, 2013) (in the absence of evidence that particular officers had personal involvement in the actions underlying a particular claim, summary judgment on that claim should be granted to those officers).

### B.  Plaintiff's Denial of Fair Trial Claim Against Detective Jackson Fails Because The Information Transmitted to the District Attorney's Office Was Not Materially False.

Plaintiff's denial of fair trial claim fails as against Detective Jackson, because there is simply no evidence that any material information he transmitted to the District Attorney's Office was false.  *See Johnson*, 2010 U.S. Dist. LEXIS 70207, at *32 (granting summary judgment to defendants in the absence of specific, admissible evidence that detective falsified information, or misled and deceived the prosecutor, judge or jury).  The only "fabricated evidence" which Plaintiff claims was a "misrepresent[ation]" that Plaintiff was in actual or constructive possession of narcotics.  *See* Amended Complaint, McLaren Decl., Exh. K at ¶¶20-21.  The evidence shows, however, that the information which the arresting officer, Detective Jackson,

provided to Kings' County District Attorney's Office was true in all material respects, and indeed, was admitted by Plaintiff himself. Detective Jackson informed the Assistant District Attorney that Plaintiff and Dale Anderson were found lying on separate couches in the living room, and that drugs, including cocaine and marijuana, were found in a container in a closet outside the living room. *See* Criminal Complaint, Exh. L. Plaintiff himself admitted in his deposition that he and Dale Anderson were asleep on separate couches in the living room, *see* Defs.' 56.1 at ¶¶39-40, and that suspected drugs were found in the apartment, in the closet outside the living room. *See id.* at ¶35. While Plaintiff may deny the legal conclusion arrived at -- that such facts established actual or constructive possession -- the facts themselves were not misrepresented to the District Attorney's Office. Accordingly, in the absence of evidence that Defendants fabricated material evidence, summary judgment must be granted to Defendants on Plaintiff's violation of fair trial claim.

**POINT VI      CLAIMS AGAINST CAPTAIN LAUTERBORN FAIL BECAUSE OF HIS LACK OF PERSONAL INVOLVEMENT**

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). However, "direct physical participation of the defendant in the constitutional violation *is not alone* a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal." *Provost*, 262 F.3d at 155. In order to hold an individual defendant liable under § 1983, plaintiff must demonstrate that the defendant both personally participated in the constitutional violation and "had knowledge of the facts that rendered the conduct illegal." *Id.* (citing *Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d Cir. 2001)).

In this case, Plaintiff's complaint fails to identify which officer defendant was involved in which alleged violation of his rights. Therefore, he has failed to meet his burden to show that

each individual officer defendant personally participated in any constitutional violations. This alone is sufficient to dismiss the individual defendants. At a minimum, however, any claims against Captain Lauterborn should be dismissed in their entirety, because the undisputed evidence shows that he was not present at Apartment 7G while it was being searched, and played no role in the arrest or prosecution of Plaintiff. *See* Declaration of Theodore Lauterborn, dated August 30, 2016 ("Lauterborn Decl."), attached to McLaren Decl. as Exhibit N ("Exh. N").

## POINT VII   PLAINTIFF'S MUNICIPAL LIABILITY CLAIM CANNOT SURVIVE SUMMARY JUDGMENT

To establish a claim against a municipality under *Monell*, a plaintiff must show that a violation of his rights resulted from a municipal custom or policy, *see Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991), and that there was a causal link between the alleged violation and such policy or custom. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). To establish *Monell* liability, "the causal link [between the alleged policy and the constitutional violation] must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." *Mercado v. City of New York*, No. 08 Civ. 2855, 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting *Monell*, 436 U.S. at 691, 694. Where a plaintiff offers no relevant and admissible evidence in support of his assertion of a policy or custom which caused his constitutional deprivation (thus failing to present evidence sufficient to permit a reasonable juror to return a verdict in his favor on an essential element of a claim on which he bears the burden of proof), a *Monell* claim cannot survive. *See Jean-Laurent v. Wilkerson*, 461 Fed. App'x 18, 22 (2d Cir. 2012); *Southerland v. Garcia*, 483 Fed. App'x 606, 609 (2d Cir. 2012).

As a preliminary matter, because a plaintiff who fails to establish an underlying violation of his constitutional rights has no basis for a claim of municipal liability, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), Plaintiff's inability to establish that he suffered a constitutional

violation, as set forth above, is fatal to his *Monell* claim.  Even assuming, *arguendo*, that Plaintiff could establish -- or at least raise an issue of material fact sufficient to maintain -- a claim for a violation of his constitutional rights, the City is still entitled to judgment as a matter of law on his *Monell* claim because Plaintiff cannot prove the existence of a municipal custom or policy that caused this alleged constitutional violation.

There is not a modicum of evidence that would support a finding that a municipal policy or custom even exists, let alone was the "moving force" behind any claimed constitutional violation.  Indeed, Plaintiff has not even articulated what he believes the alleged custom or policy is, which alone is fatal to his *Monell* claim.  *See Cuevas v. City of New York*, No. 07-CV-4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12 (S.D.N.Y. Dec. 7, 2009) ("Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right").  Rather, Plaintiff stirs together an everything-but-the-kitchen-sink stew of speculation, unproven allegations, hearsay, opinions, and titbits about incidents entirely unrelated to the incidents at issue in this case, and attempts to pass off his creation as a "policy" to violate Plaintiff's constitutional rights.  Plaintiff's efforts fail.  For a start, his strings of citations to unsubstantiated claims of police misconduct cannot support a *Monell* policy.  *See Rasmussen v. City of New York*, 766 F. Supp.2d 399, 409-10 (E.D.N.Y. 2011) (granting summary judgment on *Monell* claim where proof of policy or practice came from, *inter alia*, unsubstantiated complaints and lawsuits).  Even when allegations of misconduct are substantiated, if they are not similar to the allegations in the complaint, they are irrelevant to proving a *Monell* claim.  *See Pacheco v. City of New York*, 234 F.R.D. 53, 55 (E.D.N.Y. 2006); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (inadmissible hearsay evidence, including other court cases and news clippings, about incidents which are "scattered" and "do not coalesce into a discernible policy"

23

cannot be considered in determining existence of municipal policy) (D.C. Cir. 1986) (Ginsburg, C.J. and Bork, C.J.)).  Plaintiff's random anecdotes do not "coalesce into a discernable policy" relevant to any claim at issue here:  For example, Plaintiff cites to numerous allegations about officers planting drugs on innocent victims, which is completely irrelevant to the claims here where Dale Anderson *admitted* that the drugs which formed the basis of Plaintiff's arrest were not planted.  Many of Plaintiff's other allegations supporting his purported policy are even further removed from the pertinent issues, involving, for example, traffic summonses, harassment against police officers, racially-motivated stop-and-frisks, and excessive force. Plaintiff's resort to unconnected, and irrelevant allegations is "patently inadequate" to set forth a policy or custom, let alone a policy or custom that gives rise to Plaintiff's alleged unrelated violation.  *See Peterec v. City of New York*, No.14-cv-309, 2015 U.S. Dist. Lexis 28504, at *18-19; *Velez v. City of New York*, CV 2004-1775, 2010 U.S. Dist. LEXIS 54237, at *15-16 (E.D.N.Y. June 2, 2010) ("A complaint against a police officer is only relevant [] upon a showing that it is similar to the misconduct alleged in the action.") (citations omitted); *Pacheco*, 234 F.R.D. at 55 (allegations of misconduct not similar to the allegations in the complaint not relevant to prove *Monell* claim).[5]

Not only does Plaintiff fail to articulate a policy but he fails to produce evidence from which the Court may infer an actual causal link between the haphazard array of NYPD conduct he alleges and Plaintiff's arrest for constructive possession of narcotics.  His failure to

---

[5] Moreover, Plaintiff has to reach back for decades to find examples with which to populate his *Monell* claim.  For example, in paragraph 58(o), he refers to a case involving a drug arrest from 2000, (*Richardson v. City of New York*, 02-cv-3651, 2006 U.S. Dist. Lexis 69577 (E.D.N.Y. 2006)); in paragraph 58 (q), he cites to *White-Ruiz v. City of New York,* 93-CV-7233, 983 F. Supp. 365, filed in 1993; and in paragraph 58(r) he refers to *Ariza v. City of New York*, 93-cv-5287, 1996 U.S. Dist. LEXIS 20250 (E.D.N.Y. 2006), involving a lawsuit brought in 1993.  These stale cases, and comments from former Police Commissioners in 1985 and 1991(*see* Amended Complaint, Exh. K at ¶¶71-72) offer nothing about any NYPD policy in effect in *2015*.

demonstrate this causal link likewise requires that summary judgment be awarded to Defendants on his *Monell* claim. *See Hickey v. City of New York*, 01 Civ. 6506, at *52 (1004 U.S. Dist. LEXIS 23941 (S.D.N.Y. Nov. 24, 2004) ("The Court cannot, as plaintiffs appear to assume, somehow take judicial notice of a number of highly-publicized episodes of alleged police abuse or brutality, assume without any evidentiary record that these episodes all involved wrongful police behavior and a failure to investigate or punish such behavior, and extrapolate from those assumptions an effect on the present episode.")

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment together with such costs, fees and other and further relief as the Court deems just and proper.

Dated:       New York, New York
             January 20, 2017

                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2671

                       By:    Joanne M. McLaren

To:    <u>VIA E.C.F.</u>
       Robert Marinelli
       *Attorney for Plaintiff*