15-CV-02016 (MKB) (RML)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TERREL HASKINS,

                                                       Plaintiff,

-against-

CITY OF NEW YORK, and JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                                                       Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joanne M. McLaren*
*Tel: (212) 356-2671*

Defendants, by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this Reply Memorandum of Law in Further Support of their Motion for Summary Judgment. For the reasons set forth herein and more fully in their moving papers, Defendants respectfully request that they be granted summary judgment pursuant to Rule 56 on all of Plaintiff's claims.

## ARGUMENT

**POINT I**      **PLAINTIFF CONCEDES THAT VARIOUS CLAIMS MUST BE DISMISSED, AND ABANDONS CERTAIN OTHER CLAIMS.**

Plaintiff now explicitly concedes that his unlawful entry and search claim, his malicious abuse of process claim, and all claims against Lauterborn must be dismissed. *See* Pl.'s Mem. at 2. Although he does not forthrightly admit that his *Monell* and failure to intervene claims, and his denial of a right to a fair trial claim against Strong, Ottomanelli and Kibel, must be dismissed, by his failure to address Defendants' arguments he has conceded to their dismissal.

Plaintiff's Complaint devoted more than eighty (80) heavily-footnoted paragraphs to his attempt to articulate a theory of municipal liability pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978). In their moving papers, Defendants explained that this claim was fatally defective, because Plaintiff had not specifically identified *any* policy or custom which could be construed as a "moving force" behind any alleged constitutional violation. *See* Defs.' Mem. at 22-25. In his opposition, Plaintiff completely fails to respond, or to resuscitate his *Monell* claim in any way. Accordingly, his *Monell* claim must be dismissed. *See Bowen v. County of Westchester*, 706 F. Supp.2d 475, 492 (S.D.N.Y. 2010); *Anti-Monopoly, Inc. v. Hasbro*, Inc., 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd* 130 F.3d 1101 (2d Cir. 1997).

Defendants showed in their moving brief that because Jackson alone communicated with the District Attorney's Office, a denial of fair trial claim against all but Jackson fails for lack of

personal involvement. *See* Defs.' Mem. at 20. Plaintiff failed to respond to this argument, and unequivocally admits that only Jackson communicated with prosecutors. *See* Pl.'s 56.1 Opp. at ¶57. Having abandoned this claim against all but Jackson, summary judgment must be granted in favor of the other Defendants. *See Bowen*, 706 F. Supp.2d at 492; *Hasbro, Inc.*, 958 F. Supp. at 907 n.11. Plaintiff likewise fails to respond to Defendants' arguments as to why his failure to intervene claim cannot survive, *see* Defs.' Mem. at 16, n.3, and thus he has also abandoned this claim. *See Bowen*, 706 F. Supp.2d at 492. Accordingly, only Plaintiff's false arrest claim and denial of right to a fair trial claim against Jackson remain.

**POINT II        PLAINTIFF'S FALSE ARREST CLAIM CANNOT SURVIVE**

Probable cause existed for Plaintiff's arrest based on his constructive possession of cocaine and marijuana. "The doctrine of constructive possession allows the police to find probable cause to arrest anyone in a dwelling when contraband is discovered in plain view and it reasonably appears that all members of the dwelling exercised dominion and control over the area in which the contraband is found."[1] *Takacs v. City of New York*, 09 Civ. 481, 2011 U.S. Dist. LEXIS 7055, at *8 (S.D.N.Y. Jan. 24, 2011) (citing *United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006)). Nothing raised in Plaintiff's opposition brief refutes that conclusion.

A.    That Plaintiff Did Not Live in Apartment 7G, Even If True, Does Not Negate Probable Cause for Constructive Possession.

The principal basis upon which Plaintiff relies to rebut a finding of constructive possession is that he did not actually "live" at Apartment 7G. Thus, Plaintiff argues that he was a mere "guest" there, often stayed in shelters or with girlfriends, and received mail at multiple addresses. *See* Pl.'s Mem. at 2. Such facts -- even if true -- are beside the point. Residence in a shared apartment supports an inference of jointly exercised dominion and control, sufficient to

---

[1] Plaintiff repeats throughout his opposition that he cannot be charged with constructive possession in the absence of proof that he had dominion and control over the drugs. *See, e.g.*, Pl.'s Mem. at 1, 2, 6, 11. That is not the law. Dominion and control need not be over the drugs themselves, but merely "over the *area* the drugs were found in." *Chalmers v. Mitchell*, 73 F.3d 1262, 1272 (2d Cir. 1996) (emphasis in original).

support a lawful arrest for criminal possession of property recovered from the apartment. *See* Defs.' Mem. at 10-11. Police are entitled to believe that individuals sleeping in an apartment are residents there. *See id.* at 11-13. An ultimate discovery that an individual found sleeping in an apartment does *not* live there does not alter the probable cause analysis. *See id.* The uncontroverted evidence in this case shows that officers found Plaintiff asleep, in an apartment where he claims to live, and where the FDNY identification card he carries confirms that he lives, feet away from an unlocked closet, in a common hallway, in which cocaine and marijuana were found, in an unlocked box. This confluence of circumstances gave police probable cause to believe that Plaintiff was in actual or constructive possession of the drugs found.[2]

Plaintiff fails to appreciate the import of his being found asleep in Apartment 7G, affording police the presumption that he had actual or constructive possession of the drugs admittedly found therein. Ignoring the presumption, he complains that Defendants are advocating that "mere presence" in a dwelling suffices to establish probable cause (Pl.'s Mem. at 2), and penalizing him solely for his presence in the company of a criminal. *Id.* at 3. Not so. Defendants are merely applying the straightforward, sensible teachings explained above. Given that Plaintiff was asleep, with seemingly free reign of the apartment should he awaken when the other occupants were asleep, and given that no steps had been taken to restrict his observation of the drugs, police were entitled to believe that he was a legitimate, complicit resident.

Moreover, whether an officer has probable cause to arrest must be determined from "the facts known by the arresting officer at the time of the arrest." *Heilbut v. City of New York*, No. 04 Civ. 4332, 2006 U.S. Dist. LEXIS 71907, at *16 (S.D.N.Y. Oct. 2, 2006). Whether probable cause exists is evaluated under an objective standard. *See Lindsey v. Loughlin*, 616 F. Supp. 449, 451 (E.D.N.Y. 1985). Officers had no credible indication at the time of his arrest that Plaintiff

---

[2] Plaintiff asserts that the police believed that *only* Anderson was selling drugs from 7G. (*See* Pl.'s Mem. at 11-12). He cites to no support for this speculative proposition.

did not actually live there, and they were not required to investigate by calling homeless shelters or lists of girlfriends. *See, e.g., Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). The evidence they had was more than sufficient to cause them to believe that Plaintiff was a resident, and, at least, in constructive possession of the drugs found.

B.   The Drugs Were Sufficiently Obvious to Charge Plaintiff With Constructive Possession.

Plaintiff attempts to demonstrate that the location of the drugs was not sufficiently obvious to justify charging him with constructive possession, repeating like a refrain throughout his opposition brief that the contraband was "secreted away" and "hidden." *See, e.g.,* Pl.'s Mem. at 1, 2, 3, 6, 8. The facts, which Plaintiff has not competently controverted, show otherwise. Apartment 7G is a small apartment, of less than 900 square feet. *See* Defs.' Mem. at 13 n.2; Floor Plan, McLaren Decl. Exh. D. The drugs were found in a regular hallway closet. *See* Defs.' 56.1 at ¶34. To get to the bathroom from the room where Plaintiff had been sleeping, Plaintiff would have to pass the closet where the drugs were stored. *See id.* at ¶45.

The only competent description of the container in which the drugs were found, and the shelf on which the container was found, is offered by the arresting detective, Jackson, who removed the drugs from the closet. Jackson found the drugs in a clear Tupperware container on the shelf, at eye level, plainly visible when the door was open. *See* Defs.' 56.1 at ¶¶35-36. Moreover, Jackson vouchered three clear plastic containers as evidence from the execution of the search warrant on February 14, 2015. *See* McLaren Reply Decl. Exh. B.

Plaintiff purports to dispute that the drugs were found in the front of the closet. However, he has no basis for such a denial, as he *did not see* the recovery of the drugs from the closet, *see* Defs.' 56.1 at ¶37, and could not see the hallway from where he sat as the police were recovering the drugs. *See* Defs.' Response 56.1 at ¶31. He cannot testify that the drugs were in a cardboard box, as he testified that they were in "bags of plastic or a container, boxes." *See id.* He was

unable to determine even whether what he saw was a solid container. *See id.* While he claims to have seen a cardboard box removed from the closet, he does not know what was in that box, thus does not and cannot know if that was the container -- or the only container -- in which the drugs were found. *See id.* His speculation does not negate Jackson's assertion that the drugs were found at eye level, in plain view, in the closet, packaged in a clear plastic box.[3]

Drugs kept in a clear Tupperware box, on a shelf at eye level, in an unlocked, unpadlocked, unpassword-protected hallway closet, beside the bathroom, are simply not "hidden" or "secreted away." Plaintiff could have come across them at any point simply by looking in the closet. Even if Plaintiff did not live in Apartment 7G, the complete absence of measures taken to keep him away from the drugs strongly indicates that the owners of the property considered him "sufficiently complicit to allow him a full view." *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993).

C. Even If Dale Anderson Did Admit that the Drugs Were His, Such a Statement Does Not Negate Probable Cause for Plaintiff's Arrest.

Plaintiff argues that his claim that Anderson showed officers where the drugs were stored, and allegedly took "full responsibility" for the drugs, negates probable cause to believe that Plaintiff had any connection with the drugs. Pl.'s Mem. at 12. As an initial matter, the statement is inadmissible hearsay, which cannot defeat Defendants' motion. Plaintiff is the only witness claiming to have heard Anderson's "admission" that the drugs were his alone. *See* Defs.' Response 56.1 at ¶21. He has offered no evidence that the officers heard this statement.[4]

---

[3] Kibel testified that he did not actually see the physical contents which Jackson removed from the closet. *See* Defs.' Response 56.1 at ¶31. He did see a box which Jackson removed, and thought (fifteen months, and countless search warrants after the events at issue) that the drugs may have been in a cardboard box, but cannot remember whether it might have been plastic, or paper, instead, and cannot recall other details about the container. *See id.*

[4] Jackson never heard Anderson make any statement that the drugs were his. *See* Defs.' Response 56.1 at ¶21. Kibel testified that Anderson showed the detectives where the drugs were, but not that he said that the drugs belonged to him alone. *See id.*

5

Even if they had heard Anderson state that the drugs belonged to him alone, officers would not have been required unquestioningly to accept that it was true. Once an officer has a reasonable basis for believing that there is probable cause to effect an arrest, he is under no obligation to conduct further investigation. *See, e.g., Curley*, 268 F.3d at 70; *Celestin v. City of New York*, 581 F. Supp.2d 420, 432 (E.D.N.Y. 2008) ("[O]nce the evidence establishes probable cause, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence."). Thus, officers would not have been required to accept or investigate Anderson's purported vouching for the innocence of his friend. Once the contraband had been discovered (or the search for it had begun), Anderson could reasonably have believed that at least one person, likely himself, would be arrested, and at least one person was at risk of being tried, convicted and incarcerated. It would be naïve to prohibit officers from considering that Anderson, instead of needlessly taking another guilty party down with him, was trying to spare a family member, loved one, or trusted business partner who could keep the drug business alive while he was incarcerated. The alleged admission does not weaken or destroy the probable cause for Plaintiff's arrest.

D.  Anyone for Whom Probable Cause Exists, not Just the Target of a Search Warrant, May Be Arrested.

Plaintiff claims that the fact that the "target of the search warrant was Anderson, and plaintiff was not named or described in the warrant" is one of "numerous competing facts that negate any possibility of probable cause." Pl.'s Mem. at 6. Plaintiff cites no authority for the remarkable proposition that, when officers are executing a search warrant, they have probable cause to arrest *only* the target(s) of the warrant, and, should they arrest anyone else whom they observe to be committing a crime, all "possibility" of probable cause for those other arrests is eviscerated. Such is clearly not the law.

6

E. <u>The D.A.'s Decision Not to Prosecute Is Irrelevant to a Probable Cause Determination.</u>

Plaintiff avers that the fact that Plaintiff was not prosecuted by the D.A.'s Office is "confirm[ation]" that officers did not have probable cause. Pl.'s Opp. at 3, *see also id.* at 4 (claiming that "the dismissal of the charges against plaintiff" is a factor precluding summary judgment in Defendants' favor). This strident argument reflects a grave misunderstanding of the law. Whether a plaintiff's criminal charges were dismissed is not dispositive of probable cause. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *Quinn v. City of New York*, No. 99-CV-7068, 2003 U.S. Dist. LEXIS 3521, at *11-12 (E.D.N.Y. 2003) ("The District Attorney's failure to prosecute furnishes no support to plaintiff['s claim of false arrest]. The validity of an arrest does not depend on a finding of innocence or any other disposition.").

**POINT III    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

In an attempt to rebut Defendants' showing that the arrest of Plaintiff was not objectively unreasonable, *see* Defs.' Mem. at 13-16, the only allegations Plaintiff marshals are: that contraband was hidden in a closet where Plaintiff was not a resident, *see* Pl.'s Mem. at 14, duplicatively, that "recovered contraband was secreted away inside a closet," *id.* at 16, and that "Defendants cannot point to any fact indicating that plaintiff exercised dominion or control over the location where the contraband was found." *Id.* at 16.[5] From this, Plaintiff concludes that a finding that the officers' conduct was objectively unreasonable is the "only one" that can be reached. *Id.* at 15.

The caselaw does not support Plaintiff's position. Courts routinely find that officers are entitled to qualified immunity in constructive possession cases, despite the fact that an arrestee

---

[5] As discussed, *supra*, Defendants have provided abundant evidence that it was reasonable to believe that Plaintiff exercised dominion or control over the common area in which marijuana and cocaine were found. Indeed, the fact that Plaintiff was asleep in the apartment entitled officers to conclude that he was a resident of the apartment. *See Caraballo v. City of New York*, 10-CV-1885, 2012 U.S. Dist. LEXIS 188902, at *6-7 (E.D.N.Y. June 21, 2012).

7

did not live in the residence searched, or the drugs were not within the arrestee's unobstructed view -- the very facts which Plaintiff alleges compel "only one" conclusion, *i.e.*, that qualified immunity should not be granted. *See Cole v. City of New York*, 10-Civ. 5308, 2013 U.S. Dist. LEXIS 28530, at *22 (S.D.N.Y. Feb. 28, 2013) (finding that officer met at least the "relaxed" standard for qualified immunity, although arrestee did not live in the apartment, and denied knowledge of the drugs); *Brown v. City of New York,* 11 Civ. 1068, 2013 U.S. Dist. LEXIS 17483, at *23-24 (S.D.N.Y. Feb. 8, 2013) (despite the fact that plaintiffs were undisputedly not residents of the apartment searched, their being asleep in the room where drugs were discovered necessitated a conclusion that "reasonable officers could *at least* disagree as to whether or not there was probable cause" to arrest them on constructive possession grounds, thus there was "*at a minimum,* arguable probable cause to arrest and detain them.") (emphasis added).

As explained in Defendants' moving brief, Plaintiff here was found asleep in an apartment which had been the subject of a valid search warrant for cocaine, from which numerous, previous controlled buys of cocaine had occurred, and where cocaine and marijuana were stored at eye-level at the front of a hall closet which Plaintiff would pass every time he went to the bathroom. *See* Defs.' Mem. at 16. Plaintiff carried a NYC Fire Department identification card, showing that he lived at Apartment 7G. *See id.* His jacket was hung over a closet door in the hallway, near where the drugs were found. *See id.* The drugs were a mere 14 to 20 feet, by Plaintiff's own estimation, from where Plaintiff lay. *See id.* It is not possible to conclude, given this solid evidence, that *no* reasonable officer could have concluded that probable cause to arrest Plaintiff existed. *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995). Accordingly the officers here are entitled to, at the least, qualified immunity with respect to Plaintiff's February 2015 arrest.

**POINT II**     **PLAINTIFF'S FAIR TRIAL CLAIM FAILS.**

Plaintiff's denial of a fair trial claim fails as against all individual defendants. As discussed, *supra*, Plaintiff abandons his denial of a right to a fair trial claim as against Strong, Lauterborn, Kibel, and Ottomanelli. Plaintiff's claim against Jackson fails because there is simply no evidence that any material information which Jackson transmitted to the District Attorney's Office was false. In his Complaint, the only "fabricated evidence" which Plaintiff alleged was a "misrepresent[ation]" that Plaintiff was in actual or constructive possession of narcotics. *See* Amended Complaint, McLaren Decl. Exh. K at ¶¶20-21. Plaintiff thus appeared to take issue with the legal conclusion which he attributes to Jackson, rather than to accuse him of fabricating evidence.

In his opposition brief, Plaintiff rustles up two potential "fabrications:" 1) Jackson lied when he stated that the narcotics were in a plastic container; and 2) Jackson lied that the closet door was open. *See* Pl.'s Mem. at 16-17. Plaintiff cannot show that Jackson's statements to the District Attorney's Office were false. Nor can he show that they were material.

Jackson, as explained above, is the only witness with first-hand knowledge of the removal of the drugs from the closet. He is unequivocal that the drugs were found in clear plastic Tupperware. *See* Defs.' Response 56.1 at ¶31. He vouchered three clear plastic containers as evidence from the execution of the search warrant. *See id.*, McLaren Reply Decl. Exh. B. Plaintiff attempts to show, by the deposition testimony of himself and Kibel, that Jackson was lying, and the drugs were found in a cardboard box. As discussed, *supra,* at 4-5, 5 n.3, this testimony does not permit an inference that Jackson's testimony was false.

Nor has Plaintiff proved that Jackson fabricated evidence when he told the District Attorney's office that the closet door was open. Plaintiff's "evidence" in rebuttal is that: 1) at his

deposition Jackson did not remember whether the door was open or closed; and 2) Plaintiff disputes that the closet doors were open. *See* Pl.'s Mem. at 17. It should go without saying that Jackson's inability to remember whether a closet door was open during a search warrant fifteen months prior does not prove that his contemporaneous statement that the door was open was false. Plaintiff's own testimony is equally unhelpful to him: He testified that he did not know whether the closet door was open or closed, although he "assume[d]" that it was closed. *See* Defs.' Response 56.1 at ¶28. While he thought that he heard a closet door being opened, *id.*, there would be no way for him to know whether it was the door of the closet where the drugs were found, or another closet, or whether the door had been partially open, and what he may have heard was the door being opened further.

In any event, such minor alleged discrepancies do not constitute a denial of a fair trial. *See Ciaprazi v. Senkowski*, 00-CV5425 (JBW), 2003 U.S. Dist. LEXIS 24325, at *29 (E.D.N.Y. Dec. 5, 2003) (minor inconsistencies in recitations of events are not evidence of falsehood and do not support a denial of fair trial claim). The alleged inconsistencies must be material, and have *caused* a deprivation of liberty. *See Hoyos v. City of New York,* 999 F. Supp.2d 375, 393-94 (E.D.N.Y. 2013). Here, even if Jackson's statements about the container being plastic and the closet door being open were not accurate, such minor details cannot support a denial of fair trial claim because they did not cause Plaintiff to face a charge, or a more serious charge, or a different deprivation of his liberty, than he would have faced had Jackson informed the District Attorney's Office that the box was cardboard and the closet door was closed, or simply neglected to mention anything in this regard. For the additional reason that the allegedly incorrect facts are not material, Plaintiff's fair trial claim fails.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment together with such costs, fees and other and further relief as the Court deems just and proper.

Dated:    New York, New York
             March 15, 2017

                                ZACHARY W. CARTER
                                Corporation Counsel of the City of New York
                                *Attorney for Defendants*
                                100 Church Street
                                New York, New York 10007
                                (212) 356-2671

                                By: _____
                                      Joanne M. McLaren

To:    VIA E.C.F.
        Robert Marinelli
        *Attorney for Plaintiff*